UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NORMAN C. SONBERG,

                      Plaintiff,

   -vs-                                08-CV-364(JTC)

NIAGARA COUNTY JAIL, ET AL.,

                      Defendants.

---

APPEARANCES:          NORMAN C. SONBERG, Plaintiff *Pro Se.*

                                WILLIAM A. LONG, JR., ESQ, Buffalo, New York, Attorneys for Defendants Niagara County Jail, Beilein, Mahar, Rotko, McArther, Deveraux, Johnson, Hilson, Martin, Wilt, Colliver, Cirrito, Goeski, Granto, Bucholtz, Mendola, Frerichs, Livergood, Gozales, Yousett, Carpenter, Schiavitt, Meisenburg, Shanley, Cotton, Phillips, Logan, Langdon, Doe, Saxton, Vendetta, Stayzer, Kolbe, Stickney, Williams, Wilson, Giles, Greenwald, and Zalewski.

                                ROACH, BROWN, McCARTHY & GRUBER, P.C. (JOEL J. JAVA, JR., ESQ., OF COUNSEL), Buffalo, New York Attorneys, for Defendants Hohensee and Aikin.

## INTRODUCTION

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 seeking compensatory and punitive damages for the alleged deliberate indifference to his serious medical needs and the deprivation of medical care in violation of the Eighth Amendment to the United States Constitution. Currently pending before the court are the defendants' motions for summary judgment (Items 142, 161).

## BACKGROUND

Plaintiff commenced this action on May 19, 2008 with the filing of a *pro se* complaint pursuant to Title 42 U.S.C. § 1983 (Item 1). He filed an amended complaint on May 1, 2009 (Item 21) and a motion for leave to file a second amended complaint on November 17, 2009 (Item 43). As there was no opposition to this motion, the motion for leave to file a second amended complaint was granted on January 22, 2010 (Item 49). Answers to the second amended complaint were filed on March 1, 2010 by defendants Hohensee and Aikin (Item 56) and by the remaining defendants (hereafter "the County defendants") on February 26, 2010 (item 55).

Pursuant to a case management order and following the parties' exchange of discovery materials, on December 17, 2010, defendants Hohensee and Aikin moved for summary judgment pursuant to Fed. R. Civ. P. 56 (Item 142). On December 28, 2010, the County defendants filed a motion for summary judgment (Item 161). Defendants assert the following grounds for summary judgment: 1) the plaintiff's failure to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act of 1995; 2) the lack of personal involvement on the part of many of the defendants in plaintiff's medical care; 3) plaintiff's failure to raise a genuine issue of material fact regarding the defendants' deliberate indifference to his medical needs; and 4) the defendants' qualified immunity.

Plaintiff filed his response to the motions for summary judgment on February 7, 2011 (Items 179-232). He asserted that he was "not aware of what had to be done in regards to having to exhaust his remedies" (Item 232). He also stated that he was

hospitalized and incapacitated and did not learn of the exhaustion requirement until his transfer to Midstate Correctional Facility in June 2008. *Id.* Plaintiff stated that he mailed a grievance from Midstate on or about June 26, 2008 and another in October 2009. *Id.*

On March 22, 2011, defendants Hohensee and Aikin filed a reply in support of their motion (Item 233) and the County defendants filed their reply on March 25, 2011 (Item 235). In an order dated June 22, 2011, the parties consented to the jurisdiction of United States Magistrate Judge H. Kenneth Schroeder for all proceedings in accordance with 28 U.S.C. § 636(c). On October 18, 2012, the case was transferred to the docket of the undersigned (Item 238).

The court has determined that oral argument is unnecessary. For the reasons that follow, defendants' motions for summary judgment are granted and the complaint is dismissed.

# FACTS[1]

Plaintiff was incarcerated at the Niagara County Jail ("NCJ") from February 12, 2007 through December 31, 2007, while awaiting the disposition of criminal charges (Item 142, att. 28). During that time, he was seen by the NCJ Medical Department on 17 occasions and was treated for a number of complaints, including abdominal pain

---

[1] This factual statement is taken from the plaintiff's medical records (Item 142, Exh. J - P), the plaintiff's deposition testimony (Item 142, Exh. C), the affidavits of James Hohensee, M.D. (Item 142, att. 29), Christopher Aikin, N.P. (Item 142, att. 28), Pasquale Baranello, M.D. (Item 142, atts. 26, 27), Jeremy Johnson (Item 142, att. 30), Cindy Quigley (Item 142, att. 31), Kevin Payne (Item 142, att. 32), and the remaining County defendants (Items 168, 169).

3

and chronic obstructive pulmonary disease ("COPD")/asthma. *Id.,* ¶ 12.[2] On December 31, 2007, plaintiff was released on bail and remained free on bail until he was sentenced on March 14, 2008. *Id.,* ¶ 31. At that time, plaintiff returned to the NCJ and was booked at approximately 4:00 pm. *Id.* NCJ correctional staff conducted the intake process and completed a suicide screening. *Id.,* ¶ 34. Plaintiff reported multiple medical conditions and medications, but no indications of suicidal intentions, mental illness, or drug withdrawal. *Id.* The suicide screening resulted in a score of 2. Generally, a score of 8 or more would require notification of a supervisor and institution of constant supervision (Item 142, Exh. J).[3]

Plaintiff did not request sick call between March 14, 2008 and March 17, 2008 (Item 142, att. 28, ¶ 37). On March 17, 2008, Chris Aikin, N.P., the nurse practitioner at NCJ, reviewed plaintiff's chart, cleared him for over-the-counter medications, and instructed the nursing staff to fax a request to the Veteran's Administration ("VA") to verify plaintiff's medications. *Id.,* ¶ 39. Later that day, plaintiff was seen by Jeremy Johnson, R.N., who took plaintiff's medical history and conducted a physical examination (Item 142, att. 30, ¶ 10). Plaintiff provided a history of hepatitis C, pancreatitis, and chronic obstructive pulmonary disease ("COPD"). He told Mr. Johnson that he was taking Albuterol, Flovent, Azmacort, Zoloft, morphine, valium, aspirin, and colace. *Id.,* ¶ 15. Plaintiff's vital signs were normal and he did not exhibit

---

[2] Plaintiff acknowledged in his deposition testimony that his medical treatment in 2007 was "proper" and that this action relates only to his incarceration at the NCJ from March 14 to 24, 2008 (Item 142, Exh. C, pp. 29-30).

[3] The pages of this exhibit are not numbered.

4

any signs or symptoms of drug withdrawal. *Id.,* ¶ 18. Plaintiff did not report any suicidal ideations. *Id.,* ¶ 19.

Mr. Aikin stated that, although plaintiff related to the booking officer that he was taking morphine on admission on March 14, 2008, this information was not relayed to the Medical Department (Item 142, att. 28, ¶ 44). Generally, inmates taking opiate medication upon admission are placed on a detoxification protocol. *Id.* As plaintiff's physical examination on March 17, 2008 did not document withdrawal symptoms, the detoxification protocol was not instituted. *Id.*

On March 18, 2008, plaintiff was seen by Cindy Quigley, RN, a mental health nurse with the Niagara County Department of Mental Health Services (Item 142, att. 31). She met with plaintiff because of his previous mental health issues, which had been documented during his incarceration in 2007. *Id.,* ¶¶ 12-13. At the time of her evaluation, plaintiff was "awake and coherent" and was "not displaying any symptoms or signs" of drug withdrawal. *Id.,* ¶ 15. Additionally, plaintiff did not complain of withdrawal symptoms, nor did he complain that he was being denied any medical treatment. *Id.,* ¶ 16. It did not appear that plaintiff was in any distress and he specifically denied that he had any intentions of harming himself. *Id.,* ¶¶ 18-19. That same day, Mr. Aikin wrote an order to start plaintiff on the facility's asthma protocol, which included the administration of Albuterol and Qvar (Item 142, att. 28, ¶ 45). Additionally, on March 18, 2008, plaintiff completed a request to be seen by medical personnel. *Id.,* ¶ 47.

On March 19, 2008, in response to plaintiff's request to be seen by the Medical

Department, Mr. Aikin went to plaintiff's cell (Item 142, att. 28, ¶ 50). Mr. Aikin found plaintiff on his bed, unresponsive, and with shoelaces wrapped around his neck. *Id.,* ¶ 51. Mr. Aikin called a "Code Red," and several officers responded. They cut the laces from plaintiff's neck and he began to breathe. *Id.,* ¶ 51. Mr. Aikin provided first aid and a neck collar. Plaintiff's vital signs were stable and he was transported to Lockport Memorial Hospital on a back board. *Id.*

When he was examined at the hospital, plaintiff's vital signs were as follows: blood pressure was 130/64, pulse was 64, respiration was 24, temperature was normal, and pulse oxygen was 100%. A CT scan of plaintiff's cervical spine indicated no acute fracture or subluxation. Plaintiff was discharged that afternoon at 2:25 p.m. (Item 142, Exh. P). He was prescribed Zoloft and was placed on active supervision (Item 142, att. 28, ¶ 52).

On March 19, 2008, Mr. Aikin received plaintiff's records from the VA and was able to verify plaintiff's medications (Item 142, att.129, ¶ 54). He wrote orders for Prilosec, aspirin, colace, and MS Contin, an opiate pain reliever. *Id.* On March 20, 2008, Mr. Aikin wrote an order for Zoloft, an anti-depressant. *Id.,* ¶55. The dosage of Zoloft was increased by the Mental Health Department on March 20, 2208 and again on March 24, 2008. *Id.,* ¶¶ 56-57.

Dr. James Hohensee stated in an affidavit that, while he treated the plaintiff from approximately 1997 through 2002 as his private physician and again during his incarceration in 2007, Dr. Hohensee had no involvement with the plaintiff's medical care between March 14, 2008 and his transfer to state custody on March 24, 2008 (Item

6

142, att. 29, ¶¶ 11, 14, 25-29).

Dr. Pasquale Baranello reviewed plaintiff's medical records from the VA, NCJ, and Lockport Memorial Hospital, and the affidavits of the medical and mental health staff at the NCJ (Item 142, att. 26, ¶ 6). He stated that plaintiff's suicide screening on March 14, 2008 indicated a low risk of suicide which did not merit emergency intervention at that time. *Id.,* ¶ 43. On March 17, 2008, plaintiff's physical examination was not suggestive of substance withdrawal, and it would have been unnecessary and inappropriate to begin the detoxification protocol at that time. *Id.,* ¶ 45. The first aid care rendered following plaintiff's suicide attempt on March 19, 2008 was "in all respects proper." *Id.,* ¶ 48. It is Dr. Baranello's opinion that neither Dr. Hohensee nor Nurse Practitioner Aikin were deliberately indifferent to the plaintiff's medical needs. *Id.,* ¶ 50.

In further support of the motion for summary judgment, defendants submitted an affidavit of Captain Kevin Payne, grievance coordinator for the Niagara County Sheriff's Department (Item 142, att. 32). Capt. Payne stated that all inmates are provided with an "Inmate Handbook" which outlines the facility grievance procedure. *Id.,* ¶ 5. The grievance policy in effect at the time plaintiff was incarcerated provided that inmates must file a grievance form within five days of the event giving rise to the grievance. *Id.,* ¶ 8. If the inmate is dissatisfied with the decision of the grievance coordinator, he can appeal to the facility Major. *Id.* After receiving a response from the Major, the inmate can next seek review of the decision with the Citizen's Policy and Complaint Review Council ("CPCRC") of the New York State Commission of Correction. *Id.,* ¶ 9. Capt.

7

Payne stated he reviewed the grievance files for the month of March 2008 and determined that plaintiff did not file any grievances regarding an alleged deprivation of medical care at the NCJ between March 14, 2008 and March 24, 2008. *Id.*, ¶¶ 14-15. Capt. Payne stated that plaintiff created a hand-drawn grievance dated June 26, 2008 and some undated letters entitled "Grievance #1" and "Grievance #2," but it is unclear when or to whom these documents were sent. *Id.*, ¶ 16. In any event, Capt. Payne determined that plaintiff filed no grievance regarding the alleged denial of medical care prior to the commencement of this action on May 19, 2008. *Id.*, ¶ 18.

The County defendants have all submitted identical affidavits in which they state that they have no recollection of any NCJ employee failing to respond to plaintiff's medical needs, failing to file a grievance submitted by plaintiff, or discriminating against or harassing the plaintiff in any way (Items 168, 169).

In response to the motion, plaintiff submitted a document entitled "Exhaustion Verification" (Item 232). He stated that when he filed his lawsuit on May 19, 2008, he was "not aware of what had to be done in regards to having to exhaust his remedies." *Id.*, ¶ 1. He also stated that he was "incapable and hospitalized" from the time he left the NCJ on March 24, 2008 and did not mail a grievance until June 2008. *Id.* Plaintiff stated that when he received no reply, he sent another grievance in late September or early October 2009. *Id.*

## DISCUSSION

**1.      Summary Judgment Standard**

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged.  *See, e.g., Faulkner v. Arista Records LLC*, 797 F.Supp.2d 299, 311 n. 7 (S.D.N.Y. 2011).  Under those standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists.  *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 Fed.Appx. 387 (2d Cir. 2011).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law …." *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed …." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted) (quoted in

*Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011). In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The court recognizes its duty to "extend extra consideration" to *pro se* plaintiffs and that "*pro se* parties are to be given special latitude on summary judgment motions." *Bennett v. Goord*, 2006 WL 2794421, at *3 (W.D.N.Y. Aug. 1, 2006), *aff'd*, 2008 WL 5083122 (2d Cir. 2008) (quoting *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* party's pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest"). "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, 1999 WL 983876, at *3 (S.D.N.Y. October 28, 1999) (citing cases).

The defendants contend that summary judgment should be granted dismissing the complaint as plaintiff failed to exhaust his administrative remedies in accordance with the grievance procedures in place at the NCJ. Additionally, they argue that plaintiff has not shown deliberate indifference to his medical needs or personal involvement on the part of many of the defendants. Plaintiff contends that administrative remedies

were unavailable to him as he was unaware of the grievance procedures at the NCJ and was incapable of filing a grievance because of his hospitalization.

2.      **Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act of 1995 ("PLRA"), mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions. *See* 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Supreme Court has held that the PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Smart v. Goord* 441 F.Supp.2d 631, 636 (S.D.N.Y. 2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Failure to exhaust is an absolute bar to an inmate's action in federal court; section1997e(a) "requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516 (2002).

In assessing the affirmative defense of non-exhaustion, the Second Circuit employs a three-part inquiry. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). A court must (1) determine whether administrative remedies were in fact "available" to the prisoner; (2) consider whether the defendant has forfeited the

affirmative defense of non-exhaustion or is estopped from raising it; and (3) determine whether "special circumstances" justify the prisoner's failure to comply with administrative procedural requirements. *Id*. "Courts should be careful to look at the applicable set of grievance procedures, whether city, state or federal" in assessing availability. *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003).

In New York, formal exhaustion for prisoners in county jails requires compliance with the three-step grievance and appeal procedure outlined in the New York State Minimum Standards for Management of County Jails. *See* N.Y. Comp.Codes R. & Regs. tit. 9 ("9 N.Y.C.R.R."), § 7032.1. In this case, the NCJ employed a three-tiered grievance process with review of an inmate's complaint by the grievance coordinator, the Major of the facility, and finally the New York State Commission of Correction. Generally, "[a] prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." *Hairston v. LaMarche*, 2006 WL 2309592, at *7 (S.D.N.Y. August 10, 2006) (citing cases).

Here, as stated Capt. Payne, there was a grievance procedure in place at the NCJ that was available to plaintiff (Item 142, att. 32, ¶¶ 4-5). Pursuant to this policy, an inmate must complete and submit a grievance within five days of the act or occurrence giving rise to the grievance. *Id.,* ¶ 8. Capt. Payne stated he reviewed the grievance file for the relevant time period and found no formal grievances filed by the plaintiff relative to his incarceration of March 14 to 24, 2008. *Id.,* ¶¶ 14-15. No grievance was filed regarding an alleged denial of medical care prior to the commencement of this action. *Id.,* ¶ 20. Plaintiff does not dispute that he signed an intake form acknowledging his

receipt of an inmate handbook on his admission to the NCJ in March 2008. Additionally, he was an inmate at the NCJ from February to December 2007 and would have been informed of the inmate grievance policy during that previous period of incarceration. Accordingly, the court finds that administrative remedies were available to the plaintiff.

Additionally, the defendants have not waived the defense of exhaustion nor have they acted in any way that would estop them from raising the defense. Plaintiff "does not allege, and has offered no evidence tending to suggest, that he was in any way prevented or impeded from exhausting his administrative remedies, or misled into thinking [that] he did not need to do so." *Swanston v. Department of Corrections*, 2011 WL 5105489, at *2 (S.D.N.Y. October 27, 2011).

Finally, plaintiff alleges no "special circumstances" that would justify his failure to comply with the exhaustion requirement. Following his suicide attempt on March 19, 2008, plaintiff returned to the NCJ that same afternoon and was responsive and verbal. He was prescribed various medications, including pain medication and an anti-depressant, and remained at the NCJ until March 24, 2008. While he states that he was hospitalized and incapacitated, there is nothing in the record to suggest that plaintiff was incapable of filing a timely grievance if he felt he was being denied proper medical care. He admits that he did not attempt to grieve the alleged denial of medical care until June 2008, after he commenced this lawsuit. Accordingly, the defendants' motions for summary judgment based on the plaintiff's failure to exhaust administrative remedies are granted.

### 3. Eighth Amendment Claim

Even if the court were to excuse plaintiff's failure to exhaust his administrative remedies, the complaint must nonetheless be dismissed as plaintiff has failed to establish a violation of the Eighth Amendment.

Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983. "In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Kasiem v. Guzman*, 2011 WL 4352387, at *3 (W.D.N.Y. September 16, 2011).

"The Eighth Amendment's prohibition against cruel and unusual punishment has been construed to include the denial of adequate medical care for an inmate's serious medical needs." *Woods v. Goord*, 2002 WL 31296325, *2 (S.D.N.Y. October 10, 2002); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The care provided to prisoners to treat their injuries or illnesses must meet minimum medical standards of adequacy and be reasonably intended to satisfy their medical needs. To show that prison medical treatment was so inadequate as to

amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 at 106; *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

Under 42 U.S.C. § 1983, every claim for deliberate indifference to a serious medical need must pass a two-pronged test consisting of objective and subjective elements. First, the court must determine, with regard to objective criteria, whether plaintiff's condition is such that the alleged deprivation of medical assistance is "sufficiently serious." *Woods*, 2002 WL 31296325, at *3 (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66–67 (2d Cir.1994)); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, the court must consider whether the official "'knew that an inmate faced a substantial risk of serious harm, and disregarded that risk by failing to take reasonable measures to abate it.'" *Woods* 2002 WL 31296325 at *3 (internal cites and alterations omitted); *Harrison v. Barkley*, 219 F.3d at 137.

A serious medical need is one with some urgency or one which, if ignored, may produce death, degeneration or extreme pain. *Hathaway,* 37 F.3d at 66. As the Second Circuit held in *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003), there is no precise metric to guide the court in its estimation of the seriousness of a prisoner's medical condition. Any inquiry into the objective component of an Eighth Amendment claim must be tailored to the specific facts of each case. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). In *Chance v. Armstrong*,143 F.3d 698, 702 (2d Cir. 1998), the court set forth a non-exhaustive list of factors that are relevant to the inquiry whether a given

15

medical condition is serious. These factors include: (1) whether a reasonable doctor or patient would perceive the medical need in question as "important and worthy of comment or treatment;" (2) whether the medical condition significantly affects daily activities; and (3) "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

The gravamen of plaintiff's argument appears to be that he was denied his medications from the time he was booked on Friday, March 14, 2008 until Wednesday, March 19, 2008, when Mr. Aikin received the plaintiff's medical records from the VA and was able to verify the medications. Plaintiff reported that he was taking morphine when he was admitted to the NCJ on Friday, March 14, 2008, but was not placed on the detoxification protocol. He argues that his complaints of pain, depression, and withdrawal were ignored, and that he was not treated by any medical or mental health staff at the NCJ. Plaintiff does not appear to argue that the defendants should have known he was suicidal, and denies any knowledge of what occurred in his cell on the morning of March 19, 2008. Plaintiff has not alleged any injuries as a result of his apparent suicide attempt, but complains that his health is degenerating.

Plaintiff has failed to show a serious medical need. While plaintiff was taking a variety of medications upon his admission to the NCJ on March 14, 2008, the withholding of those medications until they were verified five days later did not create a serious medical condition that would produce death, degeneration, or extreme pain. The court recognizes that plaintiff was concerned about his health and was depressed. In his deposition, he stated that he became "light-headed" and dizzy (Item 142, Exh. C, p. 164), that he was "depressed" and "in pain" (*Id.,* p. 167), and that he was worried

16

about not having his medications and "couldn't think straight." *Id.,* p. 168. Plaintiff acknowledged that "a lot of it was psychological." *Id.* Despite the medical records that indicate plaintiff was seen on both March 17 and 18, 2008, plaintiff denied that he was seen by any medical or mental health staff at NCJ. To the extent that the failure of the NCJ staff to place plaintiff on the detox protocol upon his admission may constitute deliberate indifference, a review of the plaintiff's deposition indicates no complaints of symptoms of opiate withdrawal. Likewise, the medical records indicate that when plaintiff was seen on March 17, 2008, he was not exhibiting symptoms of opiate withdrawal, he expressed no suicidal ideations, and his vital signs were normal. Accordingly, the court finds that plaintiff has not satisfied the objective prong of the deliberate indifference standard.

Moreover, there is no evidence that the defendants were deliberately indifference to any of plaintiff's medical needs. In this case, plaintiff was evaluated by an officer upon his admission to the NCJ on Friday, March 14, 2008. He was found not to require constant supervision, but was referred to the Mental Health Department for his depression. He was seen by a registered nurse on the following Monday, March 17, 2008. At that time, he exhibited no signs of drug withdrawal and expressed no suicidal ideations. Plaintiff was evaluated by a mental health nurse on March 18, 2008. Again, he did not exhibit signs of drug withdrawal or suicidal tendencies. He requested a medical referral on March 18, 2008, and on March 19, 2008, he was found in his cell, unresponsive with shoelaces around his neck, after an apparent suicide attempt. Medical staff administered first aid and transferred plaintiff to Lockport Memorial Hospital. Upon his return from the hospital that same day, plaintiff was placed under

17

constant supervision. On March 19, 2008, following the verification of medications by the VA, plaintiff was given all his medications, including an opiate pain medication. On March 20, 2008, plaintiff was given Zoloft, an anti-depressant, and the dosage was increased on two occasions.

It is well-established that "[m]ere delay in the rendering of medical treatment in and of itself does not rise to the level of a constitutional violation." *Smith v. Montefiore Med. Ctr.-Health Serv. Div.*, 22 F.Supp.2d 275, 280 (S.D.N.Y. 1998). "Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." *Sonds v. St. Barnabas Hosp. Corr. Health Serv.,* 151 F.Supp.2d 303, 311 (S.D.N.Y. 2001); *see also Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). "To demonstrate a constitutional violation, a plaintiff must show that he sustained substantial harm because of the delay in the rendering of medical treatment." *Smith,* 22 F.Supp.2d at 280. "As long as the medical care is adequate, there is no Eighth Amendment violation." *Sonds*, 151 F.Supp.2d at 311; *see also Wandell v. Koenigsmann*, 2000 WL 1036030, *3 (S.D.N.Y. July 27, 2000) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). The court finds that any delay in providing plaintiff with his medications did not rise to the level of a constitutional violation.

Plaintiff also complains that he was not seen by Dr. Hohensee during his incarceration in March 2008, but should have been seen by a physician. "A difference of opinion between a prisoner and prison officials regarding medical treatment does not,

as a matter of law, constitute deliberate indifference." *Sonds,* 151 F.Supp.2d at 311; *see also Chance,* 143 F.3d 698 at 703 ; *McCloud v. Delaney*, 677 F.Supp. 230, 232 (S.D.N.Y.1988) ( "[T]here is no right to the medical treatment of one's choice if the prescribed treatment is based on applicable medical standards.").

Even granting plaintiff the benefit of every favorable inference, it cannot be said that his medical care was inadequate or evinces deliberate indifference on the part of the defendants. Based on the foregoing, no reasonable jury could find that the defendants acted with deliberate indifference to plaintiff's medical needs in violation of his rights under the Eighth and Fourteenth amendments. Accordingly, defendants are entitled to summary judgment as a matter of law dismissing plaintiff's complaint. As the court has found that plaintiff's claims are barred under the PLRA and that plaintiff has failed to establish an issue of fact regarding deliberate indifference under the Eighth Amendment, the court need not address the defendants' arguments that they are entitled to qualified immunity or were not personally involved in plaintiff's medical care.

**CONCLUSION**

The defendants' motions for summary judgment (Items 142, 161) are granted, and the complaint is dismissed. The Clerk of the Court is directed to close the case.

The Clerk of the Court is directed to enter judgment in favor of defendants.

The court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: 11/10/2012
p:\pending\2008\08-364.oct1512