UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NORMAN C. SONBERG,

Plaintiff,

-vs- 08-CV-364(JTC)

NIAGARA COUNTY JAIL, ET AL.,

Defendants.

---

APPEARANCES: NORMAN C. SONBERG, Plaintiff *Pro Se.*

WILLIAM A. LONG, JR., ESQ, Buffalo, New York, Attorneys for Defendants Niagara County Jail, Beilein, Mahar, Rotko, McArther, Deveraux, Johnson, Hilson, Martin, Wilt, Colliver, Cirrito, Goeski, Granto, Bucholtz, Mendola, Frerichs, Livergood, Gozales, Yousett, Carpenter, Schiavitt, Meisenburg, Shanley, Cotton, Phillips, Logan, Langdon, Doe, Saxton, Vendetta, Stayzer, Kolbe, Stickney, Williams, Wilson, Giles, Greenwald, and Zalewski.

ROACH, BROWN, McCARTHY & GRUBER, P.C. (JOEL J. JAVA, JR., ESQ., OF COUNSEL), Buffalo, New York Attorneys, for Defendants Hohensee and Aikin.

## BACKGROUND

Currently pending before the court is plaintiff's motion for relief pursuant to Fed. R. Civ. P. 60(b) (Item 249). Plaintiff brought this action pursuant to 42 U.S.C. § 1983 seeking compensatory and punitive damages for the alleged deliberate indifference to his serious medical needs and the deprivation of medical care in violation of the Eighth Amendment to the United States Constitution. In a Decision and Order filed November

15, 2012, this court granted the defendants' motions for summary judgment and dismissed the complaint (Item 239). On January 22, 2013, plaintiff filed a Notice of Appeal (Item 243) and a motion seeking an extension of time in which to file the Notice of Appeal (Item 242). On January 30, 2013, the court granted the motion and directed the Clerk of the Court to re-docket the Notice of Appeal (Item 246). Thereafter, on February 28, 2013, plaintiff filed the instant motion (Item 249). Defendants Aikin and Hohensee filed a response to the motion on April 11, 2013 (Items 252, 253) and the remaining defendants filed a response on April 26, 2013 (Items 255-65). Plaintiff filed a reply on May 6, 2013 (Item 267) and on May 10, 2013 (Item 268).

On May 17, 2013, plaintiff filed a document entitled "Notice to Courts" (Item 269). In it, he advised the court that the Court of Appeals for the Second Circuit has dismissed his appeal "because it lacks an arguable basis in law or fact." *Id.,* Exh. 2.

**FACTS**[1]

Plaintiff was booked into the Niagara County Jail ("NCJ") on Friday, March 14, 2008 at approximately 4:00 p.m. NCJ staff conducted the intake process and completed a suicide screening. That screening suggested a low risk of suicide. Plaintiff reported his use of multiple medications, including an opiate pain medication. According to facility records, plaintiff did not request to be seen by medical personnel until March 18, 2008.

On Monday, March 17, 2008, defendant Chris Aikin, the nurse practitioner at

---

[1] This factual statement is a summary of the facts found by the court in its Decision and Order (Item 239) on the defendants' previous motions for summary judgement.

NCJ, reviewed plaintiff's chart, cleared him for the use of over-the-counter medications, and instructed the nursing staff to fax a request to the Veteran's Administration ("VA") to verify plaintiff's medications. Later that day, plaintiff was seen by Jeremy Johnson, RN, who took plaintiff's medical history and conducted a physical examination. Plaintiff did not exhibit any signs or symptoms of drug withdrawal and reported no suicidal ideations.

On March 18, 2008, plaintiff was seen by Cindy Quigley, RN, a mental health nurse with the Niagara County Department of Mental Health Services. She met with plaintiff because of his mental health issues which had been documented during a previous incarceration in 2007. At the time of her evaluation, plaintiff was neither displaying nor complaining of any symptoms or signs of drug withdrawal. It did not appear that plaintiff was in any distress and he specifically denied any intention of harming himself. Additionally, on March 18, 2008, plaintiff completed a request to be seen by medical personnel.

On March 19, 2008, in response to plaintiff's request to be seen by the Medical Department, Mr. Aikin went to plaintiff's cell. Mr. Aikin found plaintiff on his bed, unresponsive, and with shoelaces wrapped around his neck. Mr. Aikin and other NCJ personnel provided first aid. Plaintiff was stabilized and transported to Lockport Memorial Hospital. At the hospital, plaintiff's vital signs were normal and a CT scan of his cervical spine indicated no acute fracture or subluxation. Plaintiff was discharged that afternoon, prescribed Zoloft, an anti-depressant, and was placed on active

supervision.[2]

That same day, Mr. Aikin received plaintiff's records from the VA, verified plaintiff's medications, and wrote orders for Prilosec, aspirin, colace, and MS Contin, an opiate pain reliever. On March 20, 2008, Mr. Aikin wrote an order for Zoloft, the dosage of which was increased by the Mental Health Department on March 20, 2008 and again on March 24, 2008. Plaintiff was transferred to state custody on March 24, 2008.

In support of his motion, plaintiff has submitted documents from the VA purporting to indicate that no person from the NCJ requested medical records from the VA during March 2008 (Item 250, Exh. 2). He has also submitted letters from a VA physician and pharmacist indicating, in general terms, the possible consequences of the abrupt discontinuation of certain medications (Item 250, Exh. 6). In her letter, Dr. Alison Sastry specifically stated that she was "unable to speculate on a causal relationship" between the discontinuation of plaintiff's medications and plaintiff's complaints regarding his incarceration. *Id.* Additionally, plaintiff denies that he was seen by Mr. Johnson on March 17, 2008 or by Ms. Quigley on March 18, 2008.

## DISCUSSION

At the outset, the court notes that plaintiff's appeal of this court's Decision and Order has been dismissed. Arguably, this court has no jurisdiction to reconsider its Decision. However, to be thorough and fair, the court has considered the merits of the plaintiff's motion for reconsideration. For the following reasons, the motion is denied.

---

[2] Plaintiff denies that he attempted suicide on March 19, 2008. He expressed a lack of awareness of what happened at the time and believes that someone tried to harm him (Item 267, pp. 3-4).

The standard of review of a motion for reconsideration under Rule 60(b) is strict. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The court may grant a motion for reconsideration under Rule 60(b) for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ... misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged ...; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Reconsideration is not appropriate "when the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. A motion for reconsideration under Rule 60(b) "[is] generally granted only upon the showing of exceptional circumstances." *Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd,* 501 U.S. 115 (1991); *Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir. 1986). Additionally, the strict requirements of Rule 60(b) apply even to *pro se* litigants. *See Flaherty v. Hackeling*, 221 F.R.D. 383, 386 (E.D.N.Y. 2004).

While plaintiff has cited several bases for his motion, the only ground that is applicable is Rule 60(b)(3). Under this subsection, "[t]he moving party must demonstrate by clear and convincing evidence that the adverse party engaged in fraud, misrepresentation, or other misconduct." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F.Supp.2d 309, 312 (S.D.N.Y. 2003) (citing cases); *accord Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989) ("[A] Rule 60(b)(3) motion cannot be

granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits."). Additionally, "[t]o prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." *State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (internal quotation marks and citation omitted).

Here, plaintiff argues that defendants Aikin and Johnson and Nurse Quigley (not a named defendant) presented fraudulent affidavits to the court in support of the previous motions for summary judgment. The court has reviewed plaintiff's entire medical file from the NCJ which was submitted in support of the defendants' motions for summary judgment (Item 142, Att. 12-14). Even accepting the truth of plaintiff's current assertions, he has not presented evidence of material misrepresentations, or any evidence that would alter the conclusion of the court with regard to the previous motions for summary judgment.

Specifically, plaintiff argues that defendant Aikin did not request plaintiff's medication record from the VA and has submitted a letter from the VA stating that no record requests were made by the NCJ during March of 2008. In an affidavit in support of the motion for summary judgment, Mr. Aikin stated that on March 17, 2008, he learned that plaintiff was back at the NCJ, approved plaintiff's use of over-the-counter medications, and requested the nursing staff to verify plaintiff's medications with the VA (Item 142, Att. 28, ¶ 39). Plaintiff's medical records reflect these notations (Item 142, Att. 12, p. 14). Mr. Aikin further stated that on March 19, 2008, he received plaintiff's records from the VA and wrote orders for several medications, including an opiate pain

reliever (Item 142, Att. 28, ¶ 54; Att. 12, p. 17). Plaintiff's VA medication record is part of the NCJ medical file (Item 142, Att. 13, pp. 39-50). The cover sheet of the medication record reflects that the record was requested from the VA by plaintiff himself.[3] *Id.,* p. 39. In plaintiff's affidavit in support of his motion for reconsideration, he stated that he brought a copy of his medical records when he was processed at the NCJ and handed them to the intake officer (Item 250, p. 18). Thus it appears that the medication record came to be in the possession of the NCJ from plaintiff himself. The medications were then "verified" by the NCJ nursing staff and ordered by Mr. Aikin. The court previously determined that any delay by the NCJ in providing plaintiff's prescription medications from March 14 until March 19, 2008 did not result in a serious medical condition, that is a condition which, if ignored, may produce death, degeneration, or extreme pain. *See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994). The letters plaintiff has submitted on this motion, from a VA physician and pharmacist, do not establish otherwise. *See* Item 250, Exh. 6. Plaintiff has failed to show that Mr. Aikin's alleged fraudulent affidavit contained material misrepresentations or prevented plaintiff from fully and fairly presenting his case on the initial motion.

Additionally, plaintiff argues that he was not seen by medical personnel on March 17 and 18, 2008. Plaintiff's medical records indicate visits by Nurse Johnson on March 17, 2008 (Item 142, Att. 12, pp. 25-26) and Nurse Quigley on March 18, 2008 (Item 142, Att. 18, p. 7). Both Mr. Johnson and Ms. Quigley submitted detailed affidavits regarding their visits with plaintiff (Item 142, Atts. 30, 31). Plaintiff has presented no

---

[3] This would explain the lack of a record request by the NCJ staff in March 2008.

evidence to suggest that the affidavits of these individuals are fraudulent, that the visits did not take place, or that the medical records in support of those affidavits were falsified. He simply denies being seen by medical personnel on those dates. In opposition to a motion for summary judgment, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth “concrete particulars” showing that a trial is needed. *Nat'l Union Fire Ins. Co. v. Deloach,* 708 F.Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted)). It is insufficient for a party opposing summary judgment “merely to assert a conclusion without supplying supporting arguments or facts....” *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). Accordingly, in opposition to documentary evidence that he was seen by medical personnel on March 17 and 18, 2008, plaintiff’s mere denial was insufficient to sustain his burden on the previous motion for summary judgment and would not alter the conclusion of the court on this motion for reconsideration.

Moreover, even assuming that plaintiff was not seen by NCJ medical personnel on March 17 and 18, 2008, there is nothing in the record to suggest that a lack of medical attention on those dates resulted in a serious medical condition. Plaintiff had a history of hepatitis C, pancreatitis, chronic obstructive pulmonary disease (“COPD”), and depression, but specifically denied any suicidal ideation. Plaintiff did not submit a request for a medical visit until March 18, 2008 and Mr. Aikin promptly responded to that request the following morning. It was at that time that plaintiff was found in his cell, unresponsive and with shoelaces around his neck. First aid was immediately

administered, plaintiff's condition was stabilized, and he was transported to the hospital. Accordingly, the alleged fraudulent declarations of Nurses Johnson and Quigley do not contain material misrepresentations that would alter the conclusion of the court and did not prevent plaintiff from fully and fairly presenting his case.

Plaintiff also argues that his failure to exhaust his administrative remedies should be excused. He has offered no new evidence in support of this argument nor does he cite to controlling law that was overlooked by the court. Plaintiff attempts merely to reargue a point that was previously decided by the court. This is improper on a motion pursuant to Rule 60(b). *Shrader v. CSX Transp., Inc.*, 70 F.3d at 257.

Finally, plaintiff appears to argue that he is entitled to some form of relief under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). The court notes that the case was not brought pursuant to the ADA and plaintiff has pleaded no facts that would suggest a violation of the ADA or his right to any relief under that statute.

**CONCLUSION**

The plaintiff's motion for reconsideration pursuant to Rule 60(b) is DENIED. This case is closed.

So Ordered.

______\s\ John T. Curtin______
JOHN T. CURTIN
United States District Judge

Dated: June 5, 2013
p:\pending\2008\08-364.may82013